## UNITED STATES DISTRICT COURT
## THE DISTRICT OF NEW JERSEY

THOMAS R.,[1]

       **Plaintiff,**

  v.

COMMISSIONER OF SOCIAL SECURITY,

       **Defendant.**

**Case No. 25–cv–14190–ESK**

**OPINION**

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff Thomas R.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration denying plaintiff's application for Social Security Disability Insurance Benefits (ECF No. 4–2 pp. 25–45).  For the following reasons, the Commissioner's decision will be **VACATED** and this matter **REMANDED**.

### I.    BACKGROUND

Because the record is voluminous, I set forth only the facts necessary for context and relevant to the issues on appeal.

On June 23, 2021, and July 16, 2021, plaintiff filed applications for benefits and supplemental security income under Title 2 and Title 16 of the Social Security Act, respectively.  (*Id.* p. 28.)  The applications were denied initially on May 4, 2022, and again on reconsideration on October 3, 2022.  (*Id.*)  Administrative Law Judge (ALJ) Edward Malvey held a hearing on February

---

[1] Due to the significant privacy concerns in Social Security cases, any nongovernmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey.  *See* D.N.J. Standing Order 2021–10.

2, 2024, at which plaintiff and a vocational expert testified.   (*Id.*)   On May 31, 2024, the ALJ issued a decision unfavorable to plaintiff, concluding that he was not disabled within the meaning of the Social Security Act.   (*Id.* p. 40.)   On June 6, 2025, the Appeals Council denied plaintiff's request for review (*id.* pp. 2–4), making the May 2024 decision the Commissioner's final decision.

## II.   LEGAL STANDARD

### a.   Standard Governing Benefits

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §404.1520(a)(4).   "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010).   The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§404.1520(a)(4)(i), 416.920(a)(4)(i).   If [the claimant] is, [the claimant] is not disabled.   *Id.*   Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). If the claimant lacks such an impairment, [the claimant] is not disabled. *Id.* §§404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [the claimant] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations" [(Listings)].   *Smith,*

631 F.3d at 634. If the claimant's impairments do, [the claimant] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If [the claimant does] not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether he can perform his [or her] "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform … past relevant work despite [the claimant's] limitations, [the claimant] is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [the claimant] cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience." *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [the claimant] is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If [the claimant] cannot, [the claimant] is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### b. Standard of Review

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Factual findings, "if supported by substantial evidence, shall be conclusive." *Id.*; *see also Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) ("Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record."). Review of an ALJ's

3

decision "is highly deferential" and "[t]he substantial-evidence threshold 'is not high.'" *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 687 (3d Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)).   Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Courts are bound by an ALJ's findings so long as they are supported by substantial evidence even if the court would have decided the matter differently.   *See Taylor v. Comm'r of Soc. Sec.*, 826 F. App'x 224, 226 (3d Cir. 2020).

An ALJ must sufficiently develop the record and explain findings to permit meaningful review when the decision is read as a whole.   *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021).   In so doing, an ALJ need not use any particular language or format.  *Id.*  Though there is deference afforded to the ALJ's evaluation of evidence, witnesses, and expert opinions, remand is appropriate when it "cannot [be] ascertain[ed] whether the ALJ truly considered competing evidence, and whether a [plaintiff's] conditions, individually and collectively, impacted [his] workplace performance." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

### III.    THE ALJ DECISION

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity.   (ECF No. 4–2 p. 30.)

At step two, the ALJ determined that plaintiff had the following severe impairments: lumbar stenosis and degenerative disc disease status-post fusion; thoracic spine degenerative disc disease, status-post separated left shoulder with degenerative joint disease; varicose veins; and obesity.  (*Id.*)   The ALJ also considered plaintiff's diagnoses for right carpal tunnel syndrome and depression but determined them to be non-severe.   (*Id.* p. 31.)   Specifically,

4

the ALJ found that plaintiff's right carpal tunnel syndrome presented "only a slight abnormality[,] … which would have no more than a minimal effect on an individual's ability"; and that plaintiff's depression "does not cause more than minimal limitation in the [his] ability to perform basic mental work activities and is therefore non[-]severe."   (*Id.*)

As to plaintiff's depression, the ALJ broadly assessed plaintiff's mental function with respect to the four "paragraph B" criteria, namely: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.   (ECF No. 4–2, pp. 31–32.)   For each functional domain, the ALJ analyzed reports from psychological examinations, testimony of medical experts, and plaintiff's own statements and found only mild limitations, thus concluding that plaintiff's depression was non-severe.   (*Id.*)   Based on all the evidence, including examinations with three separate medical professionals, the ALJ found that plaintiff's mental impairments caused "no more than 'mild' limitation in any of the functional areas[,] and the evidence does not otherwise indicate that there is more than a minimal limitation in the [plaintiff's] ability to do basic work activities."   (*Id.* p. 32 (emphasis in original).)   Before proceeding to step three, the ALJ noted that he considered all of plaintiff's impairments—severe and non-severe—in assessing plaintiff's RFC.   (*Id.* p. 33.)

At step three, the ALJ considered various Listings and determined that through the date last insured plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity" of any of the impairments listed by the regulations. (*Id.*) Specifically, the ALJ determined that plaintiff's impairments did not meet the criteria for Listings 1.15 (Disorders of the Skeletal Spine Resulting in Compromise of a Nerve Root), 1.16 (Lumbar spinal Stenosis Resulting in Compromise of the Cauda Equina), 1.18 (Abnormality of a Major Joint in Any Extremity), or 4.11 (Chronic Venous

Insufficiency).   (*Id.* pp. 33–34.)   The ALJ also considered plaintiff's obesity and use of a cane, and reflected the limitations caused by plaintiff's obesity in his RFC.   (*Id.* p. 34.)

At step four, the ALJ concluded that while plaintiff no longer had the RFC to resume his past relevant work as a police officer (*id.* p. 38), he "has the [RFC] to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, and scaffolds, and occasionally climb ramp[s] and stairs, balance, stoop, kneel, crouch, and crawl.   Lastly, he could frequently reach in all directions with the left upper extremity."   (*Id.* p. 34.)

Upon summarizing plaintiff's testimony, the ALJ determined that plaintiff's statements "about the intensity, persistence, and limiting effects of his symptoms … are inconsistent with the medical evidence of record."   (*Id.* p. 35.)   Specifically, the ALJ found that the medical evidence "noted generally full strength in the extremities and no evidence of the need for a cane to ambulate" (*id.*), citing plaintiff's orthopedic consultative examiner's assessment that plaintiff "did not need a cane, had full strength in the extremities, normal sensation, and range of motion of the upper and lower extremities, including the hands."   (*Id.* p. 36.)   The ALJ further noted that, despite the many inconsistencies in the medical record, the evidence was weighed in the light most favorable to plaintiff to determine the RFC.   (*Id.* p. 38.)

At step five, the ALJ considered plaintiff's background, RFC, and vocational expert testimony to determine that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."   (*Id.* p. 39.)   These jobs consist of office helper, mail clerk, and school bus monitor.   (*Id.*)   Accordingly, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.   (*Id.*)

6

## IV.   DISCUSSION

Plaintiff raises two challenges to the ALJ decision.   (ECF No. 7 (Mov. Br.) pp. 19–31.)   First, plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence and does not reflect the limitations for plaintiff's severe and non-severe medically determinable impairments, consistent with plaintiff's testimony and the medical evidence.   (*Id.* pp. 19–26.) Second, plaintiff argues the ALJ's step-four (past work) and step-five (alternative work) conclusions are not supported by substantial evidence because they rely on a flawed RFC and improper weighing of the medical opinions.   (*Id.* pp. 26–31.)   The Commissioner filed an opposition brief (ECF No. 12 (Opp'n Br.)) to which plaintiff filed a reply brief (ECF No. 13 (Reply Br.).)

Since plaintiff is challenging whether his impairments amount to a qualifying disability under the first four steps, he bears the burden of demonstrating that not only did the ALJ err, but that the error was harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) (holding that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).   In other words, plaintiff bears the burden of demonstrating that but for the error, he might have proven his disability.   *See Shinseki*, 556 U.S. at 409–10.   If plaintiff cannot articulate, based on the existing record, the basis for a decision in his favor, then he is unlikely to show that an error was harmful.   (*Id.*)

### a.  RFC

A plaintiff's RFC represents their maximum capability despite their limitations. 20 C.F.R.  § 404.1545(a)(1).   RFC is determined based on all relevant evidence in the record.   *Id.*   The nature and extent of a plaintiff's physical limitations are assessed first followed by their RFC to work on a regular and continuing basis.   20 C.F.R. § 404.1545(b).   The limited ability to

sit, stand, walk, lift, carry, push, pull, and perform other physical tasks may reduce a plaintiff's ability to perform past and other work.   *Id.*

Plaintiff argues that the ALJ's findings as to the RFC are not supported by substantial evidence because the ALJ failed to implement limitations consistent with his severe and non-severe impairments.  (Mov. Br. p. 20.) Plaintiff's severe impairments include: lumbar stenosis and degenerative disc disease status-post fusion, thoracic spine degenerative disc disease, status-post separated left shoulder with degenerative joint disease, varicose veins, and obesity.  (ECF No. 4–2 p. 30.)   Plaintiff argues that, had the ALJ properly considered the consistent medical evidence and plaintiff's testimony regarding his severe impairments, the ALJ would have added limitations in bending, sitting, and the use of upper and lower extremities in the RFC.  (Mov. Br. pp. 22–23.)   Plaintiff's non-severe impairments include depression and right carpal tunnel syndrome.  (ECF No. 4–2 pp. 31–32.)   Plaintiff argues that the ALJ did not consider any additional limitations for plaintiff's non-severe impairments and failed to address plaintiff's mental health in the RFC.  (Mov. Br. pp. 24–25.)

The Commissioner maintains that plaintiff's motion is an "improper request for the Court to reweigh the evidence and reach a different conclusion" and that the ALJ appropriately considered the medical evidence, plaintiff's response to treatment, and the testimony of a vocational expert to support his findings and RFC.  (Opp'n Br. pp. 7–8.)   Furthermore, the ALJ's decision need not be elaborate, and the ALJ discussed all the evidence and concluded that plaintiff's statements were inconsistent with the balance of the record.  (*Id.* pp. 12–14; *see also* ECF No. 4–2 p. 38.)

"To assess the RFC, the ALJ must consider all relevant evidence from the record, which includes statements from medical sources and the claimant's own description of her limitations."  *Morel v. Colvin*, No. 14–02934, 2016 WL

1270758, at *6 (D.N.J. Apr. 1, 2016).   "The RFC assessment must be supported by a clear statement of the facts upon which the finding is based."   *Id.*   "If a claimant's symptoms "suggest a greater functional restriction than is demonstrated by the objective evidence alone, the Commissioner considers evidence such as the claimant's statements, daily activities, duration and frequency of pain, medication, and treatment."   *Id.* (quoting *Landeta v. Comm'r of Soc. Sec.*, 191 F. App'x 105, 111 (3d Cir. 2006)).

"Although the ALJ is required to consider the [p]laintiff's subjective complaints of pain, the ALJ may reject these complaints when they are inconsistent with objective medical evidence in the record."   *Id.*   "The Third Circuit recognizes the 'acute need for some explanation by the ALJ when he has received relevant evidence or when there is conflicting probative evidence in the record.'"   *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)).   "The ALJ has discretion to evaluate [a plaintiff's] credibility and arrive at an independent judgment in regards to the true extent of the pain alleged given medical findings and other evidence."   *Id.*   "[I]f the ALJ determines that the testimony is not credible, he must indicate the basis for his conclusion."   *Id.*   "Courts will defer to the ALJ's credibility determination because the ALJ had the opportunity to assess the witness' demeanor at a hearing."   *Id.*   "The substantial evidence standard entitles an ALJ to considerable deference, especially in credibility findings."   *Id.* (quoting *Volage v. Astrue*, No. 11–04413, 2012 WL 4742373, at *7 (D.N.J. Oct. 1, 2012)).

As to his severe, medically-determinable impairments, plaintiff alleges that he experiences, at large, "issues with both his arms and hands[.]"   (Mov. Br. p. 21.)   For example, plaintiff alleges that he requires the use of a cane "for ambulation and balance" and cannot bend over and/or tie his shoes.   (*Id.* pp. 21–22.)   But plaintiff's testimony is inconsistent with the medical record. Plaintiff's office visit report on December 26, 2013 indicates that despite having

a "negative tension sign of the right lower extremity[,] he is neurologically intact bilaterally … [and] is moving relatively well[.]"  (ECF No. 4–8 p. 4.) Another office visit in July 2014 indicated that plaintiff was "able to toe and heel walk without difficulty … [and] [g]ait [was] tandem without the use of an assistive device."  (*Id.* p. 37.)   Furthermore, the report indicated that plaintiff was able to use his lower extremities in "full range of motion without pain." (*Id.*)   Another examination in October 2014 indicated the same findings.   (*Id.* p. 27.)   A 2022 report from plaintiff's treating physician, Dr. Rahul Shah, noted "5/5 strength" in the upper and lower extremities.   (ECF No. 4–9 p. 64.) Plaintiff's orthopedic consultative examiner, Dr. Juan Cornejo, also opined that plaintiff's upper or lower extremities "showed no significant evidence of joint deformity or instability." (ECF No. 4–8 p. 55.)   Moreover, Dr. Cornejo found that plaintiff "did not require the use of an ambulation aide … [and] was able to stand on his heels, toes, and squat without difficulty."   (*Id.* p. 56.)

Plaintiff thus offers no evidence in support of his position.   Hence, I find that when assessing plaintiff's RFC, the ALJ thoroughly discussed plaintiff's medical history, self-reported limitations and abilities, testimony, and medical reports.   (ECF No. 4–2 pp. 34–38.)   The ALJ provided a detailed summary of plaintiff's limitations and medical records and discussed in detail the opinions of his medical providers.   (*Id.*)

But plaintiff also argues that the ALJ failed to include additional limitations in the RFC to encompass his non-severe medically determinable impairments.   (Mov. Br. p. 25.)   Specifically, he argues the ALJ failed to implement additional limitations for plaintiff's depression, which the ALJ characterized as non-severe (ECF No. 4–2 p. 31).

I agree with plaintiff on this point.   Although the ALJ states that he "considered all [of plaintiff's] medically determinable impairments, *both severe and non-severe*, in assessing the claimant's [RFC]," (ECF No. 4–2 p. 33

10

(emphasis added)), I find that the ALJ's RFC analysis fails to account for plaintiff's depression at all.   (*See generally id.* pp. 34–38.)   The only mention of plaintiff's depression, or any related issue to the same, is the ALJ's reference to plaintiff's wife's report that plaintiff "had problems getting along with others."   (*Id.* p. 35.)

Based on Dr. Kenneth Goldberg's 2022 consultative psychiatric examination[2] of plaintiff, the ALJ concluded that plaintiff had a mild limitation in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.   (*Id.* pp. 31–32.)   Dr. Goldberg opined that plaintiff "shows minor lapses in attention and concentration[,]" limited persistence, and limited motivation.   (*Id.* p. 48.)   Despite the ALJ's conclusion and Dr. Goldberg's findings, there is no mention of plaintiff's depression in the RFC.   (*See generally id.* pp. 34–38.)

Because the ALJ failed to consider a non-severe limitation in an RFC, I cannot ascertain whether all of plaintiff's conditions, individually or collectively, impacted his ability to work, and remand is warranted.  *See Robert E. v. Comm'r of Soc. Sec.*, No. 20–06882, 2021 WL 5277193, at \*7 (D.N.J. Nov. 12, 2021) (remanding for further proceedings when the ALJ failed to consider the plaintiff's anxiety and depression–non-severe mental impairments–"in combination with his physical impairments" during the RFC formulation); *cf. John G. v. Comm'r. of Soc. Sec.*, No. 21–17256, 2022 WL 3678108, at \*6 (D.N.J. Aug. 25, 2022) (noting that even dedicating "a paragraph to discussion of Plaintiff's mental impairments and how they affected his ability to function and specifically referenced [the ALJ's] earlier discussion of

---

[2] The ALJ found Dr. Goldberg's opinion that plaintiff "did not have any signs of mental illness" to be persuasive, as it was "consistent with the generally normal mental status exam … and the [plaintiff's] report and testimony that he was not in mental health treatment."   (ECF No. 4–2 p. 32.)

11

Plaintiff's mental impairments at step two" is an appropriate incorporation of Plaintiff's mental impairments into the RFC)). Because remand is appropriate, I need not address plaintiff's other arguments.

## V.    CONCLUSION

For the reasons stated above, the Commissioner's decision denying plaintiff's application for benefits is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this opinion. An accompanying order will follow.

_/s/ Edward S. Kiel_
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: July 26, 2026